William Glenn POMERLEAU *v.* STATE of Arkansas

CR 90-110                                     795 S.W.2d 929

Supreme Court of Arkansas
Opinion delivered October 1, 1990

*William R. Simpson, Jr.*, Public Defender, and *Didi H. Sallings*, Deputy Public Defender, by: *Thomas B. Devine III*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was charged with capital felony murder in the stabbing death and robbery of David Lynn Kay. After a jury trial in Pulaski County Circuit Court, appellant was convicted of felony murder in the first degree and sentenced to life imprisonment. Appellant's sole point for reversal is that there was insufficient evidence to support his conviction.

■ Appellant freely admits he killed Mr. Kay, but he argues that, before he can be convicted of first degree murder under Ark. Code Ann. § 5-10-102(a)(1) (Supp. 1989), the state had to show he murdered Kay in the course and in the furtherance of committing a robbery, which was the underlying felony alleged in the state's information. Relevant to the facts here, a person

commits robbery if he employs physical force upon another in attempting to commit a theft. *See Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985); Ark. Code Ann. § 5-12-102 (Supp. 1989). Appellant contends that, taking the state's evidence in its best light, that evidence shows only that appellant committed a theft *after* the killing was completed. We disagree.

In *Owens* v. *State*, 283 Ark. 327, 675 S.W.2d 834 (1984), the defendant was charged with capital felony murder, rape and aggravated robbery, and in one count, Owens was charged with employing the use of physical force for the purpose of committing a theft. Similar to appellant's argument in the present case, the defendant in *Owens* argued that, while he had confessed to the theft, he claimed the theft was an afterthought to his attack on his victim. In disposing of Owens's contention, we stated as follows:

> We need not attempt to fathom Owens' mind to determine whether theft came to him as forethought or an afterthought to his attack on Ms. Moore. He admitted having only a few coins when he entered Ms. Moore's home and then going promptly to purchase and consume drugs. The proof clearly permitted a finding that Owens took the money, and whether his primary purpose was other than obtaining money, it is enough under the circumstances that the murder and the theft occurred during the same brief interval. The jury could have inferred that theft was a purpose behind his assault, it need not have been the only purpose.

*Owens*, 283 Ark. at 334, 675 S.W.2d at 838.

The case of *Grigsby* v. *State*, 260 Ark. 499, 542 S.W.2d 275 (1976), is also helpful. There the defendant was convicted of capital felony murder while in the perpetration of a robbery. On appeal, Grigsby argued that his directed verdict motion should have been granted because the only evidence about what happened at the time of the killing showed that he took his victim's property after the killing and that there was no evidence that the taking was anything other than an afterthought. In rejecting Grigsby's argument, we concluded that for us to rule as a matter of law that the robbery was an afterthought would require that portions of Grigsby's statement, which was mostly exculpatory, be taken at face value. We further stated the following:

If indeed Grigsby murdered Childers, and the killing was not accidental, it would be difficult to believe that anything other than robbery motivated the killing. Suffice it to say that the circumstantial evidence here furnishes adequate support for the jury's finding that Childers was killed in the perpetration of a robbery.

*Grigsby*, 260 Ark. at 507, 542 S.W.2d at 280.

In the instant case, appellant gave two taped statements wherein he admitted he killed Mr. Kay. As previously mentioned, however, he claims that these statements reflect he only stole Kay's property after he killed Kay. However, to accept appellant's contention on this point would require us to take at face value certain portions of his statements, when, to do so, would run contrary to the settled rule that the jury has the right to accept that part of a defendant's statement and testimony it believed to be true and reject that part it believed to be false. *Harris v. State*, 294 Ark. 484, 743 S.W.2d 822 (1988); *Grigsby*, 260 Ark. 499, 542 S.W.2d 275. In addition, in examining appellant's statements, we note that inconsistencies exist between the two, and some of the assertions contained in both defy common sense or belief.

In sum, appellant's version of what occurred was that he was hitchhiking from California back to his home in Maryland when Mr. Kay picked him up on Interstate 40 in Little Rock. Appellant accompanied Kay to his home ostensibly for the purpose of having some drinks, yet at all times, appellant kept a weapon (knife) concealed on his body. Appellant says he accepted Kay's invitation to spend the night on the couch and that he was later awakened by Kay's attempt to unfasten appellant's pants. Appellant struck Kay, and he then stabbed Kay several times in the throat. Appellant then claimed Kay, who had been repeatedly stabbed and had no weapon of his own, tried to stop appellant from fleeing out of the carport door of Kay's house. In their struggle, the two men returned to the inside of the house, where appellant proceeded to stab Kay a total of forty-three times. The state's medical evidence showed many of Kay's wounds were defensive in nature. Appellant asserted that, after the stabbing of Kay, his only thought was to "get the hell out of Dodge." Nonetheless, appellant's next move was to tie up Kay with his

neckties, but he aborted that idea when he discovered Kay was dead. After killing Kay, appellant showered, changed clothes and ransacked the house, taking cash, jewelry, a VCR and Kay's new automobile.

In viewing the evidence in the light most favorable to the state, we have no hesitancy in concluding that a jury could have inferred that theft was the motivating purpose behind appellant's attack on Mr. Kay and that Kay's murder facilitated that purpose. Appellant admittedly did not have enough money to return to his Maryland residence. After going with Kay, appellant spent little time with him before stabbing and killing him — which acts permitted appellant to acquire money, an automobile and other property that allowed him to resume his journey to Maryland. Like the situations that occurred in the *Owens* and *Grigsby* cases, the appellant's killing of Kay and theft of his money and property took place within a brief interval of time.

In considering the evidence and circumstances depicting and surrounding the killing and theft, we believe the jury clearly could have inferred the appellant murdered Kay with the purpose of taking his money and property. Accordingly, we affirm. In affirming, we also state that we have examined all other objections made during the trial pursuant to Sup. Ct. R. 11(f) and find no error.